**RADIATION DYNAMICS, INC.,**
**Plaintiff,**

v.

**Lawrence GOLDMUNTZ, Philip A. Fisher, individually and under the trade name and style of Fisher & Co., Hollybrook Co., John M. Hollern, Conley Brooks, individually and under the trade name and style of Allbrook Co., Defendants.**

No. 68 Civ. 2011.

United States District Court,
S. D. New York.
March 5, 1971.

Netter, Lewy, Dowd, Fox, Ness & Stream, New York City, for plaintiff; by Arnold C. Stream, and Edward M. Berman, New York City, of counsel.

White & Case, New York City, for defendants Hollybrook Co., John M. Hollern, Conley Brooks, individually and under the trade name and style of Allbrook Co.; by P. B. Konrad Knake, Jr., New York City, of counsel.

## DECISION

POLLACK, District Judge.

On July 15, 1964 the plaintiff employed Smith, Barney & Company, who are investment bankers, advisers and stockbrokers, as plaintiff's agents to find a purchaser for and to sell on plaintiff's behalf 2800 shares of TRG stock at $46 a share upon a private offering and investment letter basis.

Defendants' Exhibit 301 in evidence, the letter of July 15, 1964, from Radiation Dynamics, Incorporated to Smith, Barney & Company, Inc., reads in pertinent part:

"Pursuant to our conversation today and subject to our acquiring said stock as aforesaid, we authorize you to sell on our behalf 2800 shares of TRG at $46 per share upon a private offering and investment letter basis.

"We agree to pay to you a standard New York Stock Exchange commission upon any sales made by you."

Plaintiff had agreed to acquire these shares together with other portfolio assets of deVegh International Corporation, Inc., in exchange for plaintiff's capital stock.

The TRG stock was valued at the same price, namely $46 a share, in that exchange. The plaintiff was badly in need of cash for current working capital and the TRG stock was not registered, was restricted from public sale or distribution and could only be sold in a private placement subject to an investment letter from the purchaser.

The brokers recommended to two Minneapolis clients for whom they furnished investment advisory services that they should purchase the stock for certain trust accounts which the Minneapolis people managed. The latter agreed to buy the stock and the brokers sold and delivered the stock to them in or about August 1964 charging a commission on the sell side and also on the buy side as well, apparently on a disclosed dual agency basis.

The plaintiff now sues the Minneapolis purchasers claiming that through the plaintiff's agents and brokers the Minneapolis defendants became privy to material inside information concerning a merger in process of negotiation by TRG with Control Data Corporation.

The plaintiff contends that the Minneapolis defendants as tippees should have abstained from the purchase and not having either disclosed their material inside knowledge to plaintiff or abstained

from buying are chargeable with a Rule 10b–5 [1] fraud on the plaintiff.

Plaintiff seeks damages claiming the difference between the selling price and some other amount to be found by the triers of fact.

At the close of the plaintiff's case the Minneapolis defendants moved to dismiss the complaint against them. They also had pending a motion made before the trial for summary judgment under Rule 56 which they were given leave to renew and which they did renew at the commencement of the trial. Decision was reserved and it is now renewed at the close of the entire case on an application for a directed verdict.

The plaintiff has failed to produce a scintilla of evidence or any inference which could be drawn from evidence inculpating the Minneapolis defendants on any fraud on the plaintiff, whether Rule 10b–5 or any other.

The plaintiff has not shown by even a scintilla of evidence that its own agent, Smith, Barney & Company, had any knowledge of negotiations by TRG with Control Data for an acquisition or merger at the time they were employed on July 15, 1964 or at the time of the sales to the Minneapolis defendants, and plaintiff has not adduced evidence that Smith, Barney knew any more about the Control Data situation than did the plaintiff.

The evidence is that Smith, Barney & Company did not inform the Minneapolis defendants of anything relating to Control Data with TRG, and there is no proof and no inference can legally be drawn to the contrary from any proof or circumstances in the evidence.

Certainly if Smith, Barney & Company, plaintiff's agent and broker in the transaction, had material inside information which it failed to disclose to plaintiff, its own principal, the Minneapolis defendants to whom no such information was dispensed by anyone, cannot be liable to Smith, Barney & Company's principal.

This is not a case where the transaction was initiated by the defendants. They did not solicit plaintiff directly or indirectly to trade with them. The seller through its own agents sought out and interested the purchasers without making any reference to Control Data Corporation and the purchasers were in ignorance of the interest and negotiations of Control Data Corporation in the situation at the time when the purchasers agreed to accept plaintiff's offer of the stock at plaintiff's valuation and price of $46 a share and on plaintiff's terms of investment letter.

■ The plaintiff is chargeable in the transaction with whatever its agent knew in negotiating the sale.

As plaintiff's counsel have forceably urged in another context, the knowledge of an agent is the knowledge of his principal, although the information may never have actually been communicated to the principal.

■ A principal who gives his agent authority to solicit a sale and accepts the fruits of his efforts will be held responsible for the fraudulent means by which the contract was obtained if such means are in line with the accomplishment of the object of the agents.

An agent's knowledge is imputed to his principal. A principal may not receive the fruit of the bargain without being charged with a means employed by his agents in obtaining it.

■ Imputing knowledge of Smith, Barney & Company to its Minneapolis customers would merely put the case in the posture of imputing the broker's knowledge to both the plaintiff and the defendants and a fortiori there was nothing to be disclosed since Rule 10b–5 requires only equal access to known information. The short of it is that neither party knew anything about the Control Data situation ac-

---

1. 17 C.F.R. § 240.10b–5, promulgated pursuant to the Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b).

cording to their evidence respectively which has not in anywise been questioned. Surmise, conjecture and speculation do not substitute for evidence. Whether their evidence is or is not credited, the plaintiff is left without proof to sustain a claim on which relief may be granted, and there is no genuine issue of material fact for the jury to resolve.

The motion for a directed verdict is granted and the complaint against the Minneapolis defendants is accordingly dismissed with costs. Pursuant to Rule 54(b), there being no just reason for delay, judgment may be entered in favor of the Minneapolis defendants against the plaintiff forthwith.

So ordered.